**Dorothy L. BIERY, et al.,**

**and**

**Jerramy and Erin Pankratz,
et al., Plaintiffs,**

**v.**

**The UNITED STATES, Defendant.**

**Nos. 07–693L, 07–675L.**

United States Court of Federal Claims.

Feb. 27, 2009.

**CERTIFICATION ORDER**

FIRESTONE, Judge.

These consolidated rails-to-trails cases present the question of whether a taking of

property in violation of the Fifth Amendment to the United States Constitution has occurred. The takings claim arises by operation of section 1247(d) of the National Trails System Act ("Trails Act"), 16 U.S.C. § 1247(d)(2000), which provides that "interim [trail] use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." In *Preseault v. Interstate Commerce Commission* ("*Preseault I*"), 494 U.S. 1, 8, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990), Justice Brennan explained:

> This language [of 16 U.S.C. § 1247(d)] gives rise to a takings question in the typical rails-to-trails case because many railroads do not own their rights-of-way outright but rather hold them under easements or similar property interests. While the terms of these easements and applicable state law vary, frequently the easements provide that the property reverts to the abutting landowner upon abandonment of rail operations.

However, "if the terms of the easement when first granted are broad enough under then-existing state law to encompass trail use, the servient estate holder would not be in a position to complain about the use of the easement for a permitted purpose." *Preseault v. United States* ("*Preseault II*"), 100 F.3d 1525, 1552 (Fed.Cir.1996) (en banc). In both cases, the outcome turns on the terms of the easement and state law.[1] As the Supreme Court in *Preseault I* wrote, "state law creates and defines the scope of the reversionary or other real property interest affected by the ICC's actions pursuant to § 208 of the National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d)." *Preseault I*, 494 U.S. at 20, 110 S.Ct. 914 (concurring opinion of Justice O'Connor); *see also Ruckelshaus v. Monsanto*, 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984).

The parties to these two consolidated cases have filed cross-motions for summary judg-

---

**1.** *See Hash v. United States*, 403 F.3d 1308 (Fed. Cir.2005); *Toews v. United States*, 376 F.3d 1371 (Fed.Cir.2004); *Chevy Chase Land Co. v. United States*, 158 F.3d 574 (Fed.Cir.1998) (certifying state law questions to the Maryland Court of Appeals); *Chevy Chase Land Co. v. United States*,

355 Md. 110, 733 A.2d 1055, 1076–77 (1999) (answering certified state law questions); *Chevy Chase Land Co. v. United States*, 230 F.3d 1375 (Table), 1999 WL 1289099 (Fed.Cir.2000) (decision following the state court's answer to certified questions); *Preseault II*, 100 F.3d at 1525.

ment on title and liability issues. Based on a review of these pending cross-motions, this court has determined (consistent with the U.S. Supreme Court's decision in *Preseault I*, 494 U.S. at 20, 110 S.Ct. 914) that resolution of the liability issues in this case turns in large part on questions of Kansas state law as to which it appears to this court that there is no controlling precedent in the decisions of the Kansas Supreme Court and the Kansas Court of Appeals.

The State of Kansas has enacted the Uniform Certification of Questions of Law Act, codified at Kan. Stat. Ann. §§ 60–3201–60–3212 (2008). This state statute provides a procedure by which the Kansas Supreme Court may answer questions of law "certified to it by the supreme court of the United States, a court of appeals of the United States, a United States district court or the highest appellate court or the intermediate appellate court of any other state." Kan. Stat. Ann. § 60–3201.[2] Jurisdiction over Fifth Amendment takings claims is shared by the United States district courts and the United States Court of Federal Claims. Under 28 U.S.C. § 1346(a)(2) (2000), the United States district courts "have original jurisdiction, concurrent with the United States Court of Federal Claims," over claims against the United States, not exceeding $10,000 in amount, that are founded on the Constitution, including takings claims brought pursuant to the Fifth Amendment. Jurisdiction over claims that exceed $10,000 in amount rests exclusively with the Court of Federal Claims under 28 U.S.C. § 1491(a)(1) (2000). In this case, the plaintiffs elected to file their Fifth Amendment takings claims in the Court of Federal Claims rather than in the United States District Court for the District of Kansas. Given this shared jurisdiction, this court interprets the Kansas Uniform Certification of Questions of Law Act as allowing it to request certification of questions of Kansas state law. *See* Kan. Stat. Ann. § 60–3211 ("This act shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it.").

Thus, this court hereby certifies to the Kansas Supreme Court the following questions of state law:

(1) On the facts of each of these two consolidated cases,[3] would the easements acquired by the railroad through condemnation under Kansas Gen. Stat. 1868, Ch. 23, or by the voluntary grant in question, have been considered abandoned by the railroad as a matter of Kansas state law, but for application of the Trails Act, 16 U.S.C. § 1247(d)?

(2) Under Kansas state law, do the easements in this case, acquired by the railroad through condemnation under Kansas Gen. Stat. 1868, Ch. 23, or by the voluntary grant in question, include the right of a railroad and/or a non-railroad to use the property for railbanking and/or interim trail use, including the right of the public to use the property for a recreational hiking and biking trial, as contemplated by 16 U.S.C. § 1247(d)?

(3) Under Kansas state law, were the easements acquired by the railroad acquired for a public use that can be converted to another public use without causing those easements to be terminated or extinguished, even if the new public use is outside the scope of the easement originally acquired by the railroad under Kansas state law? If so, do railbanking and interim trail use as contemplated by 16 U.S.C. § 1247(d) constitute public uses to which the easements in question could

---

**2.** Kan. Stat. Ann. § 60–3201 provides, in its entirety:

The Kansas supreme court may answer questions of law certified to it by the supreme court of the United States, a court of appeals of the United States, a United States district court or the highest appellate court or the intermediate appellate court of any other state, when requested by the certifying court if there are involved in any proceeding before it questions

of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the court of appeals of this state.

**3.** The circumstances of each of the consolidated cases are somewhat different, as set forth in the attached Joint Statement of Facts.

be shifted without causing the easements to be terminated or extinguished?

Kan. Stat. Ann. § 60–3203 requires that, in addition to setting forth the questions of law to be answered, the certification order must include "a statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose." Accordingly, the parties in this case have agreed to a Joint Statement of Facts pertinent to the certified questions, a copy of which is attached to this certification order.[4] In addition, the parties have compiled a Joint Appendix (also attached hereto) of exhibits from the evidentiary record in this case that are referenced in the Joint Statement of Facts. In accordance with Kan. Stat. Ann. § 60–3204, the court will also direct that copies of any and all additional portions of the record in this case be made available to the Kansas Supreme Court.

The names and addresses of the counsel of record to the parties in the consolidated cases are set forth on page seven (7) of the Joint Statement of Facts attached hereto.

**IT IS SO ORDERED.**

---

**4.** The court has determined, based on the nature of the property interests acquired by the railroad, that only the following plaintiffs remain in the litigation: 1) all of the plaintiffs in the *Pankratz* case, including Thad J. Colling and Jennifer McLaughlin, for whom the parties agree that the railroad acquired an easement via voluntary deed, and 2) *Biery* plaintiffs Gordon Holloway, the Stacy Judy Trust, and (to the extent it can be shown that any portion of the subject right of way was acquired by other than the Phillips Investment Company warranty deed of August 4, 1899) Dorothy Biery.